UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
AUG 04 2011
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KENNETH G. DIFFERENT HORSE;<br>MIRANDA RAE DIFFERENT HORSE;<br>JENNIFER LEE GRASSROPE;<br>GENEVA WATLEMATH;<br>JOE BONE CLUB;<br>MONICA BEARFACE;<br>DONALD WEINBERGER, III;<br>DEBRA BOYD;<br>LARRY HENRY;<br>MELISSA MOORE AMMON;<br>WINOWNA HENRY SCHULTZ;<br>IDA GUERRE;<br>CHESTER HERMAN;<br>COLIN CAMPBELL;<br>MATTHEW LAMONT;<br>SANDRA HARMON;<br>KEVIN SARGEANT;<br>GAYLENE J. LONG-STUMP;<br>PATRICK JACK LONG; and<br>JOHN DOES 1 through 50,000, and all<br>other persons similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>KENNETH L. SALAZAR, Secretary of<br>the Interior; and DONNA M. ERWIN,<br>Special Trustee,<br><br>      Defendants,<br><br>and ROSEBUD SIOUX TRIBE,<br><br>      Defendant-Intervenor. | \* | CIV 09-4049<br><br><br><br><br><br><br><br><br><br><br><br>MEMORANDUM OPINION<br>AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BACKGROUND

This Complaint arises from the extensive litigation between the Sioux Nation and the United States regarding the payment for land taken by the Fort Laramie Treaty of 1868 and the unlawful taking of the Black Hills and hunting rights to other lands by legislation enacted in 1877. This litigation is commonly referred to as "Docket 74-A and Docket 74-B." *See Cheyenne River Sioux Tribe v. United States*, 806 F.2d 1046, 1048 (Fed. Cir. 1986). The Sioux Tribe claimed both damages for loss of land ceded under the Fort Laramie Treaty of April 29, 1868 (Docket 74-A) and a 5th Amendment violation by the taking of the Black Hills resulting from the Act of February 28, 1877 (Docket 74-B). *Id.* The suit for Docket 74 was brought in 1950 by the eight present-day Sioux Reservation Tribes in a representative capacity on behalf of the Sioux Tribe of Indians. *See Sioux Tribe of Indians v. United States*, 862 F.2d 275, 277 (Fed. Cir. 1988) (history of litigation). In 1960 the two claims were separated and referred to as Docket 74-A and Docket 74-B. *Sioux Tribe v. United States*, 500 F.2d 458, 477 (Ct. Cl. 1974). A recitation of all of the facts and all of the court opinions is not necessary for resolution of this case. *See, e.g., Sioux Tribe of Indians v. United States*, 84 Ct. Cl. 16 (1936), *cert. denied*, 302 U.S. 740, 58 S.Ct. 139 (1937). *See generally*, EDWARD LAZARUS, BLACK HILLS/WHITE JUSTICE: THE SIOUX NATION VERSUS THE UNITED STATES, 1775 to the PRESENT (1991).

In Docket 74-A, the Indian Claims Commission found that the Sioux Tribe of Indians had been paid an inadequate amount of money for the land it ceded to the United States under the 1868 Treaty. *Sioux Tribe v. United States*, 500 F.2d 458 (Ct. Cl. 1974); *Sioux Tribe v. United States*, 42 Ind. Cl.Comm. 214, 232, 257 (1978). After various litigation before the Indian Claims Commission and the Court of Claims, the Court of Claims ultimately directed the entry of judgment in Docket 74-A for the Sioux Tribes in the sum of $40,245,807.02, representing the liability award of $43,949,700.00 less the allowable offsets of $3,703,892.98. *Sioux Tribe of Indians v. United States*, 14 Cl. Ct. 94, 100 (1987). *See also Sioux Tribe of Indians*, 862 F.2d at 281 (affirming Court of Claims order denying motion of two of the eight Sioux Tribes for relief from the settlement judgment).

In Docket 74-B, the Court of Claims affirmed the order of the Indian Claims Commission that the 1877 enactment, which took the Black Hills while claiming to implement an "agreement" whereby it was claimed the Sioux relinquished their rights to the Black Hills. The "agreement" was ratified by less than ten percent of the adult tribal males although the 1868 treaty required that three-fourths consent. *Sioux Nation of Indians v. United States*, 601 F.2d 1157, 1161 (Ct. Cl. 1979). In addition, the "agreement" provided no compensation for the taking. Instead, the rations that were provided to only some of the Sioux as a *quid pro quo* for depriving them of their chosen way of life as nomadic hunters "[were] not intended to compensate them for the taking of the Black Hills." *United States v. Sioux Nation of Indians*, 448 U.S. 371, 423 (1980). The 1877 legislation also took away hunting rights to land other than the Black Hills. Without weapons and hunting ground and not knowing how to farm, the Sioux were dependent upon rations from the United States. The legislation was a taking of tribal property that had been set aside for the Sioux by a prior treaty. *Sioux Nation of Indians v. United States*, 601 F.2d at 1172. The Supreme Court affirmed the decision of the Court of Claims and held that for the unconstitutional taking the Sioux Nation was entitled to interest dating from 1877 on the principal sum of $17.1 million, ultimately resulting in an award of $105,994,430.52, including interest then accrued, to the Sioux Nation. *United States v. Sioux Nation of Indians*, 448 U.S. 371 (1980); *Sioux Nation of Indians v. United States*, 650 F.2d 244, 227 Ct. Cl. 404 (1981); *Sioux Nation v. United States*, 33 Ind. Cl. Comm 151 (1974). The amount has been stated to subsequently exceed $650 million. FRANK R. POMMERSHEIM, BROKEN LANDSCAPE: INDIANS, INDIAN TRIBES, AND THE CONSTITUTION 343 n.142 (2009).

The claims award is governed by the Indian Tribal Judgment Funds Use or Distribution Act of 1973, 25 U.S.C. §§ 1401-1407. The Secretary of the Interior is required to prepare a distribution plan with tribal input within one year after appropriation of funds to pay a judgment. The plan must have at least twenty percent devoted to tribal needs. All eight participating Tribes have passed tribal resolutions in opposition to any distribution of a money judgment. No evidence of an appropriation or a distribution plan was introduced in this case. As a matter of other background, in 1985, Senator Bradley (D.N.J.) first introduced legislation to return the federally owned portions of the Black Hills to the Sioux Indians. Ultimately, two of the eight tribes involved withdrew their support for the legislation. Why the support was withdrawn was a mystery to the prime sponsor of the legislation.

3

BILL BRADLEY, TIME PRESENT, TIME PAST: A MEMOIR 313 (1996). The legislation did gain co-sponsors but never passed either house of Congress. For a more complete statement of the return of the Black Hills legislation, *see* LAZARUS, *supra*, at 414-428.

## DISCUSSION

Tribes have been designated as "domestic dependent nations," *Cherokee Nation v. Georgia*, 30 U.S. 1, 13 (1831), and do not possess "the full attributes of sovereignty;" they remain a separate people "with the power of regulating their internal and social relations." *United States v. Kagama*, 118 U.S. 375, 381-382 (1886). Indian tribes have also been recognized as "distinct, independent political communities," qualified to exercise many of the powers and prerogatives of self-government. *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 327 (2008), (quoting *Worcester v. Georgia*, 31 U.S. 515, 559 (1832)); *see also United States v. Wheeler*, 435 U.S. 313, 322-323 (1978).

History and case law have established that the "sovereignty that the Indian tribes retain is of a unique and limited character." *Wheeler*, 435 U.S. at 323. It centers on the land held by the Tribe and on tribal members within the reservation. *Plains Commerce Bank*, 554 U.S. at 327; *see United States v. Mazurie*, 419 U.S. 544, 554 (1975) (Tribes retain authority to govern "both their members and their territory," subject ultimately to Congress); *see also Nevada v. Hicks*, 533 U.S. 353, 392 (2001)("[T]ribes retain sovereign interests in activities that occur on land owned and controlled by the tribe")(O'Connor, J., concurring in part and concurring in the judgment). They "possess inherent rights over internal tribal affairs to make substantive laws governing their members and their territory." Patrice H. Kunesh, *Tribal Self-Determination in the Age of Scarcity*, 54 S.D.L.Rev. 398, 401 (2009) (*citing Mazurie*, 419 U.S. at 557) ("Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory").

The Supreme Court has consistently held that tribes have sovereign immunity and that, subject to limited exceptions, have the right to self-governance, unimpeded by federal authorities. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58-59 (1978); *United States v. United States Fidelity & Guar. Co.*, 309 U.S. 506, 512-13 (1940). However, Congress can waive a tribe's

sovereign immunity by an "unequivocal expression" of Congress' intent to waive tribal sovereign immunity on a particular issue. *Santa Clara Pueblo*, 436 U.S. at 58-59. There has been no showing in this case of any Congressional intent to waive sovereign immunity nor have any of the eight tribes in question even suggested that any of them have waived their sovereign immunity as to these issues.

The waiver of tribal sovereign immunity is essential in this case if this Court is to have jurisdiction over these claims. The reason is that the tribes in question are indispensable parties under Federal Rule of Civil Procedure 19(b). "No individual Indian has title or an enforceable right in tribal property." *Holt v. Commissioner of Internal Revenue*, 364 F.2d 38, 41 (8th Cir. 1966), *cert. denied*, 386 U.S. 931 (1967). Even more to the specific point, in *Eastern Band of Cherokee Indians*, 117 U.S. 288, 308 (1886), the Supreme Court stated:

> Their claim, however, rests upon no solid foundation. The lands, from the sales of which the proceeds were derived, belonged to the Cherokee nation as a political body, and not to its individual members. They were held, it is true, for the common benefit of all the Cherokees, but that does not mean that each member has such an interest, as a tenant in common, that he could claim a *pro rata* proportion of the proceeds of sales made of any part of them.

The Sioux Tribes are indispensable parties, but they have not waived their sovereign immunity. Accordingly, this Court has no jurisdiction over the Sioux Tribes. *See Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986).

The Court will therefore consider Rule 19(b) of the Federal Rules of Civil Procedure concerning whether the case can proceed when joinder of a party is not feasible. Each of the four factors for determining whether this case can still proceed weigh against proceeding. The factors are not rigid, but each should be examined.

The first factor is the extent to which a judgment rendered in the tribes' absence might prejudice those tribes. The extent of prejudice to the absent tribes is substantial. The position of the absent tribes is directly contrary to that of the Plaintiffs. The tribes wish to maintain their legal and

moral claims to return the Black Hills and the other lands in question. The Sioux Tribes believe their claims will be extinguished by accepting the money that Plaintiffs seek.

The next factor is the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, or shaping the relief or by other measures. There is no way to shape a remedy to avoid the prejudice to the absent tribes. The money relief requested by Plaintiffs diminishes if not extinguishes the claims for the land by the absent Sioux Tribes.

The third consideration is whether a judgment rendered in the Sioux Tribes' absence would be adequate. Due to lack of standing of the present party plaintiffs, any Order by this Court would be a nullity as the Court is without jurisdiction. In addition, the next step is for Congress to appropriate the funds to pay the judgments. The Court does not even have the proper parties, the Sioux Tribes, before it so that the Court could consider whether it has the authority to even consider a request for Congress to appropriate, if such a request were made by the Sioux Tribes. No judgment rendered in this case would be adequate as there is no jurisdiction.

The final consideration is whether the Plaintiffs would have an adequate remedy if this action were dismissed for non-joinder. If there is no adequate alternate remedy elsewhere, then the Court is to be more cautious about dismissing a case for non-joinder. This is not, however, a dismissal for some procedural defect. Rather, as in *Wichita and Affiliated Tribes*, 788 F.2d at 777, " The dismissal of this suit is mandated by the policy of tribal immunity." There cannot be an alternate remedy as the Plaintiffs have no valid claim and the Sioux Tribes have sovereign immunity and cannot be joined in this action. *See also In re U.S.A. ex. rel. Hall*, 825 F.Supp. 1422 (D.Minn. 1993) (in suit brought by individual members of tribe, members had no standing and could not involuntarily join contracting tribes due to sovereign immunity). These Plaintiffs have no remedy in any event since they have no valid claim.

The Plaintiffs have no individual interest in or claim to the dollar awards to the Sioux Tribes that have been entered for the wrongs in question. There is, therefore, no injury-in-fact to satisfy the

case or controversy requirement that is a prerequisite to federal court jurisdiction under Article III of the Constitution. *Hodel v. Irving*, 481 U.S. 704, 711 (1987).

In addition to the constitutional standing requirements, there are also prudential standing limitations on federal court jurisdiction. One of these prudential principles, subject to certain exceptions not applicable here, "is that the plaintiff generally must assert his own legal rights and interests." *Id.* at 711. Plaintiffs claim but have no individual legal rights to nor individual legal interest in these funds. Plaintiffs' understandable personal interest in getting a share of the judgment award before they pass on does not make that personal interest a legal interest or right. Neither constitutional nor prudential standing requirements are satisfied and this Court is without jurisdiction to proceed with this case concerning these individual claims of tribal members.

This is an internal tribal matter. Plaintiffs wish to receive their portion of the funds for the wrongful taking of the Black Hills and the lands ceded by the Treaty of Laramie of 1868. Plaintiffs have a position contrary to that of their tribal governing bodies. That difference of position is an internal tribal matter into which the federal courts cannot intrude. The fact that this is an internal tribal matter not subject to federal court intervention is another recognition of tribal sovereignty. If a tribe changes its position, that is for the tribe to decide.

Plaintiffs have also requested class action certification. The Court need not address that issue as it is moot due to its dismissal of Plaintiffs' claims as individuals. *See National Indian Youth Council v. Watt*, 501 F.Supp. 649 (D.N.M. 1980) (*aff'd, sub nom. National Indian Youth Council v. Watt*, 664 F.2d 220 (10th Cir. 1981)).

If there is to be any other resolution for these past wrongs, then the resolution must come from someplace other than the Courts. Under the system of laws in the United States, there are constraints upon the authority of the federal courts as that authority is limited to what is granted in the Constitution and by law. Here, if there is to be any different resolution other than providing money in return for the taking of land, then any other resolution must come from Congress. The United States Supreme Court, when considering the taking of the Black Hills, did not have the

7

question before it of returning the land to the Indian tribes from whom it was taken. Accordingly, the Supreme Court in *United States v. Sioux Nation of Indians*, 448 U.S. 371 (1980), did not question whether the United States could take the land. Instead, the question was what legal theory fit the taking, and what, if any, compensation other than subsistence rations for a limited time to some tribal member, should be awarded. The Indians no longer had weapons for hunting, and the separate rights to hunting land had also been taken from them. In addition, as farmers they did not know how to farm and raise their own food even if the reservation land would support such farming. *Sioux Nation of Indians v. United States*, 220 Ct. Cl. 442, 457-58, 601 F.2d 1157, 1166 (1979), *aff'd*, 448 U.S. (1980). In a sense, this was a final chapter to end the Sioux wars where the United States got the land by unilateral legislative action.

The fact remains that resolution by the Courts is at an end. If there is to be any result other than the current stalemate, then it must come from tribal government and the Congress of the United States.

Plaintiffs' claims are dismissed without prejudice. All other pending motions are dismissed without prejudice as moot. Accordingly,

IT IS ORDERED:

1. That Plaintiffs' claims are dismissed without prejudice.

2. That all other pending motions are dismissed without prejudice as moot.

Dated this 4th day of August, 2011.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ Eileen Schulte
Deputy

8